UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANGELA ALTAGRACIA JORGE,

                                                     **Plaintiff,**

                         -against-

COMMSIONER OF SOCIAL SECURITY,

                                                  **Defendant.**

-----------------------------------------------------------------X

18-CV-10040 (SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

      Plaintiff Angela Altagracia Jorge seeks review of the August 2, 2017 decision from the Administrative Law Judge denying her application for Social Security Disability benefits. 42 U.S.C. § 405(g). Both parties move for judgment on the pleadings.

      As relevant here, Jorge contends that symptoms caused from her diagnosed major depressive disorder render her disabled under the Social Security Act. (Jorge does not challenge the ALJ's finding that she is not physically disabled under the law.) The ALJ considered her mental impairments and concluded that there was not sufficient evidence to support a finding that Jorge was unable to work due to mental impairments. In so doing, the ALJ gave "little weight" to Jorge's treating psychiatrist. This decision is free from legal error and supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleading is granted.

## BACKGROUND

**I.     Jorge's Application and Hearing**

Jorge was born in Santo Domingo, Dominican Republic in 1957. Administrative Record, ECF No. 10 ("AR") 37-38. She completed two years of high school and obtained a GED. Id. at 38. Although she speaks and understands English, she felt more comfortable testifying in Spanish at her April 25, 2017 hearing. Id. Jorge applied for disability benefits on February 3, 2015, while she was still working part time as a retail sales associate. Id. at 155. She had not worked full time since 2013 because of leg and back problems. Id. at 38-39.

When she applied for benefits, Jorge listed only physical conditions that limited her ability to work. Id. at 155. Additionally, in completing her adult function report, Jorge responded that she did not have any problems following spoken or written instructions or getting along with bosses or other people in authority. Id. at 169. She reported that she did not have trouble remembering things. Id. at 170.

Jorge testified at her hearing that she started seeing a psychiatrist in January 2016 because she was "feeling very depressed because I need to work." Id. at 45. She testified that she treats with Dr. Hilda Brewer once monthly and meets with a therapist twice monthly. Id. Although the testimony is ambiguous, Jorge testified that she had difficulty concentrating on reading because she gets depressed. Id. at 46.

At the conclusion of Jorge's hearing, the ALJ indicated that he would subpoena the treating records from Dr. Brewer. Id. at 56. The responsive records were proffered to Jorge's attorney, who raised no objection. Id. at 224.

**II.     Medical Records**

On January 8, 2016, Jorge saw psychiatrist Dr. Hilda Brewer at the Emma L. Bowen Community Service Center for a psychiatric assessment. Id. at 298-303. Dr. Brewer concluded that Jorge's affect was constricted, and her mood was sad and anxious. Id. at 300. Dr. Brewer described Jorge's thought process as both goal-directed and tangential and indicated that there was no evidence of delusions. Id. Jorge, however, reported hearing voices calling her name since the summer of 2015 and seeing shadows. Id. at 301. Dr. Brewer concluded that Jorge's cognitive functions were fair or good. Id. Dr. Brewer diagnosed Jorge with "major depressive disorder, recurrent episode with psychotic features." Id. at 302. Jorge was prescribed Seroquel, a drug prescribed to treat symptoms of schizophrenia and bipolar disorder, and Remeron, a drug prescribed to treat depression. Id. at 303. Dr. Brewer also recommended that Jorge begin psychotherapy. Id.

Jorge returned to the Emma L. Bowen Community Service Center on February 9, 2016, and was seen by a social worker for a therapy intake evaluation. Id. at 304-309. Jorge reported feelings of depression related to leaving her employment in January 2015 for medical reasons. She stated that the symptoms started in May 2015 after being without work for a prolonged period. On a mental status evaluation, the clinician reported mostly good or fair evaluations, and noted that Jorge reported experiencing auditory hallucinations. Id. at 308.

In a September 9, 2016 treatment plan review, Jorge reported that she was making some progress sleeping better, denied crying, reported that sadness has decreased, but reported that hallucinations continued. Id. at 394. She reported that she wanted to stop feeling sad and depressed but denied any new symptoms at that time. Id. at 397, 400. On a functional

assessment, the clinician reported "moderate" impairment to Jorge's social/interpersonal, educational/vocational and leisure, and "severe" impairment of her "health." Id. at 400.

In a December 7, 2016 treatment plan, Jorge reported some progress toward alleviating her depressed mood, stating that she cries minimally and that her sleeping patterns had slightly improved. Id. at 404. Jorge denied new symptoms. Id. at 410. On a functional assessment, the clinician reported "moderate" impairment to Jorge's social/interpersonal, educational/vocational and leisure, and "extreme" impairment of her "health." Id. The December 7, 2016 treatment plan review indicates that the next review date was March 6, 2017, but there are no other medical records provided for Jorge's mental health treatment from the Emma L. Bowen Community Service Center.

Dr. Brewer completed a mental impairment questionnaire on April 11, 2017. Id. at 353-58. She confirmed that Jorge was treating bi-weekly with a therapist and monthly with a psychiatrist. Dr. Brewer identified Jorge's signs and symptoms to include: anhedonia or pervasive loss of interests; appetite disturbance with weight change; decreased energy; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; emotional withdrawal or isolation; distractibility; memory impairment; and sleep disturbance. Id. at 354.

In completing a checklist for mental abilities and aptitudes needed to do unskilled work, Dr. Brewer concluded that Jorge had "no useful ability to function" in her ability to: (1) remember work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) maintain attention for two hour segments; (5) maintain regular attendance and be punctual within customary, usually strict tolerances; (6) sustain an ordinary routine without special supervision; (7) work in coordination with or proximity to others without being unduly distracted; (8) make simple work-related decisions; (9) complete a normal workday and workweek without interruptions from psychologically based symptoms; (10) ask simple questions or

request assistance; (11) accept instructions and respond appropriately to criticism from supervisors; (12) deal with normal work stress; (13) set realistic goals or make plans independently of others; (14) interact appropriately with the general public; (15) maintain socially appropriate behavior; (16) adhere to basic standards of neatness and cleanliness; (17) travel to unfamiliar places; and, (18) use public transportation. Id. at 355-356. Dr. Brewer also opined that Jorge had marked limitations in activities of daily living and extreme difficulties maintaining social functioning and maintaining concentration, persistence or pace. Id. at 357. Dr. Brewer reported that Jorge experienced three episodes of decompensation within a 12-month period, each of at least two weeks' duration. Id. Dr. Brewer stated that she anticipated Jorge's condition to cause her to be absent from work more than four days per month. Id. at 358.

Apart from treatment with the Emma L. Bowen Community Service Center, Jorge treated with Dr. Ramon Delmonte, a primary care physician. At a follow-up appointment on February 6, 2016, Dr. Delmonte performed a PHQ-9 depression screening test and Jorge scored a zero out of nine, evidencing minimal or no depression. Id. at 331. Dr. Delmonte's later notes do not discuss Jorge's PHQ-9 results or depression. See id. at 333 (June 21, 2016); 336 (September 28, 2016), 338 (October 20, 2016).

## III. The ALJ's Decision

As relevant here, the ALJ found that Jorge's diagnosis of major depressive disorder was non-severe, concluding that it did not impose "more than minimal limitations." Id. at 21. Despite that conclusion, the ALJ proceeded to consider whether Jorge's mental impairment met or equaled Listing 12.04. The ALJ concluded that Jorge had "no limitations" in understanding, remembering or applying information, and in interacting with others. The ALJ concluded that Jorge had "mild limitations" in concentrating, persisting or maintaining pace, and in adapting and managing herself.

In considering the evidence of mental health impairment, the ALJ noted that Jorge denied psychiatric limitations in her function report, stating only that she was depressed because she stopped working. The ALJ also considered Dr. Brewer's medical source statement, noting that Dr. Brewer reported that Jorge was unable to meet competitive standards because of her mental incapacity and has no useful ability to function in unskilled, semi-skilled or skilled work. The ALJ considered Dr. Brewer's report that Jorge had marked restriction of daily activities and had experienced three episodes of decompensation within a 12-month period, each of at least two weeks' duration.

The ALJ gave this opinion little weight. He concluded that there was not substantial evidence to support a finding of such severe disability. He noted that Jorge alleged that her depression developed because she was not working and had not included psychiatric problems in her disability benefits application or function report. The ALJ considered the (admittedly few) records produced in response to his subpoena. He described them as revealing no abnormal findings on mental health other than complaints of depression and anxiety. Accordingly, he found that Jorge was able to perform light work and denied her benefits.

## DISCUSSION

I. Applicable Law

A. Standard of Review

In reviewing the Commissioner's decision, a court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The Commissioner's decision may only be set aside if it is "based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999)

(quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir.1998)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

**B. Definition of Disability**

A claimant is disabled under the Social Security Act if she demonstrates an "inability to engage in any substantial gainful activity" because of "any medically determinable physical or medical impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period" of at least a year. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step process that ALJs apply to determine if an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. The steps are followed in a set order. Id.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

Selian v. Astrue, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012)) (alterations in original). The claimant bears the burden of proof in the first four steps, and the Commissioner bears the burden in the last. Id. at 418.

## II. Severity of the Mental Impairment

To be "disabled" within the meaning of the Act, a claimant's impairments must be "severe," meaning that they "significantly limit[ ] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a)(4)(ii), (c). The severity standard "is *de minimis* and is only intended to screen out the very weakest cases." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). See also Bowen v. Yuckert, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring). Despite Dr. Brewer's diagnosis of major depressive disorder, the ALJ concluded that Jorge's major depressive disorder was non-severe because "the evidence demonstrates that [it] impose[s] no more than minimal limitations." See AR at 21.

Jorge appears to argue that a diagnosis of major depressive disorder is a *per se* severe impairment. To be severe, an impairment must "significantly limit your physical or mental ability to do basic work activities," which are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522. If an impairment is severe, the ALJ proceeds to step three in the sequential evaluation. The Commissioner's policy instructs that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, adjudicators should generally proceed with the sequential analysis rather than deny the claim at step two. See Social Security Ruling (SSR) 85-28, 1985 WL 5685619, at *4.

The ALJ followed this requirement. Despite finding that Jorge's major depressive disorder was not severe, the ALJ proceed to evaluate Jorge's mental impairment using the special technique employed by the Commissioner. To the extent it was error to conclude that Jorge's diagnosed major depressive disorder was non-severe, such error was harmless.

8

To evaluate the severity of mental impairments, the ALJ must consider the degree of functional impairment in four areas: (1) understand, remember and apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). These functions are rated on a five-point scale: none, mild, moderate, marked and extreme. The ALJ concluded that Jorge had "no limitations" in understanding, remembering, or applying information, and in interacting with others. The ALJ found "mild limitations" regarding Jorge's concentration, persistence and pace, and in adapting or managing herself.

In reaching his conclusion, the ALJ considered Jorge's own function report, in which she denied attention problems, stated she can follow instructions of others, had no problem in social interactions and no memory deficits. Jorge also denied psychiatric limitations in her function report. The ALJ further noted that at her hearing, Jorge testified that she was depressed because she could not work (and not the other way around). The ALJ also considered the PHQ-9 depression screening test performed by Dr. Delmonte in which Jorge scored a zero out of nine, evidencing minimal or no depression.

Additionally, the ALJ considered the medical records received from Jorge's mental health provider pursuant to his subpoena. The ALJ described those records as revealing "no abnormal findings on mental status examinations, other than complaints of depression/anxiety." AR at 27. This is a reasonable assessment. Jorge's functional assessments reflect only "moderate" impairment for social/interpersonal, educational/vocational and leisure activities. And although Jorge continued to report depression and even hallucinations, the clinical assessment was that her mental health was generally improving with treatment and medication. Nothing in her records reflected decompensation.

Accordingly, substantial evidence supports the ALJ's conclusion that Jorge's mental health impairments did not interfere with her ability to work.

## III. Treating Physician Rule

Following step three of his analysis, the ALJ concluded that Jorge had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). See AR at 23-27. In reaching this decision, the ALJ weighed the medical evidence in the record and, as relevant here, determined that Jorge's major depressive disorder did not prevent her from performing light work. Id. Accordingly, the ALJ gave "little weight" to the opinion of Jorge's treating psychiatrist, who had concluded that Jorge is unable to meet competitive standards or has no useful ability to function in any of the mental abilities required to perform unskilled, semi-unskilled, or skilled work. See id. at 355-58. Jorge argues that the ALJ violated the treating physician rule.

The "treating physician" rule grants deference to a claimant's treating doctor. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). The rule requires an ALJ to give a treating physician's opinion as to the nature and severity of a claimant's impairment "controlling weight" if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citing 20 C.F.R. § 404.527(d)(2). "Medically acceptable clinic and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool." Id. (cleaned up) (citing Green-Younger, 335 F.3d at 107. If an ALJ gives treating physician's opinion less than controlling weight, he must weigh a set of factors to determine how much weight it should receive. See id.; 20 C.F.R. § 404.1527(d)(2). Among other things, the ALJ must consider: the length and nature of the treatment relationship,

whether the medical opinion is supported by evidence, and whether the physician is a specialist. 20 C.F.R. § 404.1527(c). More weight is generally given "to the medical opinion of a specialist about medical issues related to his or her area of specialization than to the medical opinion of a source who is not a specialist." Id.

In analyzing the weight to be given to Dr. Brewer's opinion, the ALJ appropriately noted that Dr. Brewer is a psychiatrist who first saw Jorge in January 2016, the nature of the treatment Dr. Brewer prescribed, and whether Dr. Brewer's opinion was consistent with the mental health examinations and other record evidence. Thus, the ALJ properly evaluated Dr. Brewer's opinion under the treating physician rule. See Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019). In affording Dr. Brewer's opinion "little weight," the ALJ concluded that the opinion was not well-supported and that it was inconsistent with other substantial evidence in the record. This finding is free from legal error.

In an opinion dated April 11, 2017, Dr. Brewer concluded that Jorge had marked or extreme limitations in her functionality (daily living, social functioning, and concentration/pace), and had "no useful ability to function" in nearly every ability for unskilled and skilled work. In addition, Dr. Brewer reported that Jorge had experienced three episodes of decompensation within at 12-month period, each of at least two weeks' duration. Dr. Brewer's answers are provided in form check boxes; she did not offer any narrative response despite prompting. Other than Dr. Brewer's opinion statement, there is no evidence in the record to support such profound impairment. First, Jorge's own statements bely such limitations. She did not apply for disability benefits for mental impairments and denied limitations caused by her mental health in her adult function report. Second, Jorge's mental health records do not support these extreme limitations. There is no evidence of any decompensation episodes and progress notes report improvement

with treatment. Although Jorge reported continued depression and even auditory hallucinations, her medical provider believed that continued therapy and medication was addressing these concerns. Third, the records from Jorge's primary care doctor do not suggest severe mental health issues, and her February 2016 PHQ-9 score was zero. Jorge treated with her primary care doctor frequently from 2014 through 2016, and that doctor never reported severe mental health impairments. Thus, the ALJ acted within his discretion when he concluded that Dr. Brewer's opinion was not well-supported and inconsistent with the record evidence. This decision is free from legal error.

### IV. Duty to Develop the Record

The Court recognizes the limited records that were provided from Jorge's mental health provider in response to the ALJ's subpoena. But Jorge's counsel never objected when the responsive records were proffered and has not suggested that other records exist that would support Jorge's claim. The ALJ's obligation to follow-up with a provider is only triggered if the provider fails to respond to a first subpoena. Here, the provider responded, and Jorge's counsel accepted the response. The ALJ was under no further obligation to follow-up. See 20 C.F.R. § 404.1512(b)(1). Accordingly, to the extent Jorge seeks remand to develop the record, such objection is not well taken.

### CONCLUSION

Jorge's motion for judgment on the pleadings is DENIED, and the Commissioner's cross-motion is GRANTED. The Clerk of Court is respectfully requested to close this case.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED: March 13, 2020
New York, New York

12